IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 11-22490-CMB |
| ) | |
| ROBERT ALLEN BERTOLOTTI, JR., ) | Chapter 7 |
| ) | |
|     Debtor. ) | |
| ) | |
| ) | |
| KARL M. POGONOVICH, ) | Adv. No. 11-02398-CMB |
| ) | |
|     Plaintiff, ) | Adv. Doc. No. 16 |
| ) | |
| v. ) | |
| ) | |
| ROBERT ALLEN BERTOLOTTI, JR., ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

The matter before the Court is Karl M. Pogonovich's Motion for Summary Judgment in the above-captioned adversary proceeding seeking a determination of nondischargeability pursuant to 11 U.S.C. §523(a)(2)(A).[1] Pogonovich contends that a default judgment entered in his favor against the Debtor in the Court of Common Pleas of Washington County, Pennsylvania should be given preclusive effect in this nondischargeability proceeding. For the reasons stated herein, this Court finds that the elements of collateral estoppel have not been met and summary judgment is not appropriate.

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment in this adversary proceeding. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

I.  **Background and Procedural History**

On May 4, 2006, the Debtor and his former spouse, as sellers, entered into an installment land contract with Pogonovich, as buyer, for the real property located at 312 Plum Run Road, Smith Township, Washington County, PA 15021 ("Property"). Subsequently, a dispute arose with respect to the contract.

Debtor commenced two actions, which were ultimately consolidated, against Pogonovich in the Court of Common Pleas of Washington County (Docket Numbers 2007-1845 and 2008-5984).[2] In those actions, Debtor sought ejectment and alleged breach of contract involving the sale of the Property.

In December 2008, Pogonovich filed an Answer, New Matter and Counterclaim to Plaintiff's Complaint in Ejectment. The Counterclaim set forth a number of counts for breach of contract and one count for vexatious conduct. At that time, however, the Counterclaim did not set forth a count alleging fraudulent inducement or fraudulent representation.

On June 12, 2009, the docket reflects service of Pogonovich's interrogatories directed to Debtor.[3] Shortly thereafter, on June 18, 2009, Debtor's counsel withdrew their appearance. On September 30, 2009, the failure to respond to Pogonovich's interrogatories resulted in an order directing full and complete answers to be provided. However, no answers were provided. Although Debtor, apparently acting without counsel, delivered a number of documents to the

---

[2] Debtor's former spouse was also a Plaintiff in the state court proceedings. However, her role is not relevant for the purpose of this Memorandum Opinion. Generally, reference will only be made to Debtor herein.

[3] This Court notes that, prior to the June 2009 interrogatories, Pogonovich served his first set of interrogatories directed to Debtor in July 2007. Although Debtor did not answer the interrogatories, the docket reflects no attempt by Pogonovich to compel Debtor's cooperation with discovery at that time. In fact, the docket shows a failed attempt to settle the matter. Then, after the commencement of the ejectment action in 2008, the docket reflects service of Pogonovich's interrogatories directed to Debtor on June 12, 2009.

office of Pogonovich's counsel in December 2009, that appears to be Debtor's last attempt to participate in the case. The docket reflects no further activity by Debtor or his former wife, and it appears new counsel was not retained. Nonetheless, the case proceeded, albeit with periods of inactivity.

By August 2010, Pogonovich filed a Motion for Sanctions alleging failure to respond to discovery. On August 31, 2010, the Washington County Court entered an Order providing as follows:

> [A]fter Motion and opportunity to be heard, it is hereby ORDERED that Plaintiffs, Robert and Jodi Bertolotti, produce responses to Defendant's Interrogatories and Request for Production of Documents within thirty (30) days of entry of this Order.
> Upon Plaintiffs' failure to produce these records or any part of them, Plaintiffs' Complaint in Ejectment shall be dismissed, with prejudice, and judgment shall be granted in Defendant's favor and against Plaintiffs.
> It is FURTHER ORDERED that Plaintiffs shall pay all costs and attorney's fees arising out of this Motion and such other relief as may be just and proper to Defendant, in the amount of $1,000.00.

Thus, the Debtor was notified of the consequences of continued failure to comply.

Also on August 31, 2010, the Court signed an Order granting Pogonovich's Motion for Leave to Amend Defendant's Answer, New Matter and Counterclaim to Plaintiffs' Complaint in Ejectment. The Motion for Leave to Amend provided that new information revealed that the counterclaim as filed did not set forth all causes of action. The Amended Answer New Matter and Counterclaim ("Amended Counterclaim") included a count alleging fraud in the inducement and a count alleging fraudulent misrepresentation. A Notice to Plead informed the Debtor of the need to file a written response or risk the entry of judgment against him. No response to the Amended Counterclaim was filed.

On November 3, 2010, the Washington County Court entered an Order providing, "after Motion and opportunity to be heard, it is hereby ORDERED that Plaintiffs' Complaint in

Ejectment shall be dismissed, with prejudice, and judgment shall be granted in Defendant's favor and against Plaintiffs." Notice of Entry of Judgment Final Order or Decree was sent to 400 Scott Hollow Rd., Burgettstown, PA 15021[4] and 515 Robinson Chuch [sic] Rd., Bulger, PA 15019, advising that judgment was entered in the amount of $235,269.57 in the proceeding at Docket Number 2008-5984. The judgment is final and not appealable as no appeal was timely filed.

On April 20, 2011, Debtor commenced this Chapter 7 bankruptcy case. On August 1, 2011, Pogonovich filed his adversary complaint seeking a declaration that the judgment obtained against the Debtor in the state court is nondischargeable. Pogonovich subsequently filed his Motion for Summary Judgment asserting that the state court judgment is entitled to preclusive effect. Debtor opposes the Motion. The matter is now ripe for decision.

## II. Discussion

In this adversary proceeding, Pogonovich seeks a determination of nondischargeability pursuant to 11 U.S.C. §523(a)(2)(A), which excepts from discharge any debt "for money property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" In his Motion for Summary Judgment, Pogonovich contends that the state court judgment "conclusively determined in favor of Pogonovich and against the Debtor each fact supporting each cause of action averred in Pogonovich's Counterclaims, including specifically the causes of action designated as 'Fraud in the Inducement' and 'Fraudulent Misrepresentation.'" Thus, the issue is whether the default

---

[4] In his Answer filed in this proceeding, Debtor admits that he resides at 400 Scott Hollow Road, Burgettstown, PA 15021.

4

judgment meets the elements of collateral estoppel. If it does, as Pogonovich contends, then summary judgment would be appropriate.

The standard for deciding a motion for summary judgment is set forth in Fed.R.Civ.P. 56, made applicable in adversary proceedings pursuant to Fed.R.Bankr.P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The burden is initially on the moving party. *See Rosen v. Bezner,* 996 F.2d 1527, 1530 (3d Cir. 1993). A party moving for summary judgment can satisfy its burden by citing to materials in the record, including depositions, documents, affidavits, stipulations, admissions, and interrogatory answers. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding the motion for summary judgment, all inferences to be drawn from underlying facts shall be construed by the Court in the light most favorable to the non-moving party. *Bezner*, 996 F.2d at 1530. With this standard in mind, the Court evaluated the Motion for Summary Judgment.

In this matter, whether summary judgment should be granted depends upon the preclusive effect of the state court judgment. As a starting point, collateral estoppel is applicable in bankruptcy court discharge proceedings. *See Wolstein v. Docteroff* (*In re Docteroff*), 133 F.3d 210, 214 (3d Cir. 1997). The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that this Court give the state court judgment the same preclusive effect that it would be given in courts of the rendering state. *Straker v. Deutsche Bank Nat. Trust*, No. 3:09-cv-338, 2011 WL 398374, at *4, 2010 U.S. Dist. LEXIS 141039, at *10 (M.D. Pa. Feb. 3, 2011). Thus, this Court looks to the law of Pennsylvania to determine appropriate treatment of the state court judgment in order to resolve the Motion for Summary Judgment.

5

Pursuant to Pennsylvania law, the doctrine of collateral estoppel, or issue preclusion as it is also called, is intended to avoid the relitigation of an issue in a later action even though the later proceeding is based on a different cause of action than the prior litigation. See *Weney v. Workers' Comp. Appeal Bd.* (*Mac Sprinkler Sys.*), 960 A.2d 949, 954 (Pa. Commw. Ct. 2008). "Collateral estoppel is based upon the policy that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" *McGill v. Southwark Realty Co.*, 828 A.2d 430, 434 (Pa. Commw. Ct. 2003) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991)).

The elements of collateral estoppel as applied by Pennsylvania courts are as follows:

(1) the issue decided in the prior case is identical to the one presented in the later case;

(2) there was a final judgment on the merits;

(3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and

(4) the determination in the prior proceeding was essential to the judgment.

*See Weney*, 960 A.2d at 954. Specifically, in order to be given preclusive effect, the issues must have been actually litigated in the prior action. *See McGill,* 828 A.2d at 434-35.

Primarily, in this case, the parties have focused on whether the issues were actually litigated such that the default judgment is a final judgment on the merits. Because the Court finds for the reasons expressed herein that the issues were not actually litigated, the Court need not address the other elements of collateral estoppel.

The Pennsylvania Supreme Court adopted the elements set forth in the Restatement (Second) of Judgments for issue preclusion, and Pennsylvania courts look to the comments to the Restatement for guidance. *McGill*, 828 A.2d at 434. In addressing the application of collateral

estoppel to default judgments, the Commonwealth Court of Pennsylvania acknowledged in *McGill* that it was an issue of first impression for the court and concluded that a default judgment does not meet the "actually litigated" element and thus such judgments are not given preclusive effect. *Id.* at 434-35.[5] Thus, we begin with this general rule and analyze whether there is an applicable exception.

Pogonovich acknowledges the general rule that collateral estoppel does not apply to judgments entered by default. However, he attempts to distinguish a default judgment resulting from complete failure to appear in an action and a default judgment entered as a discovery sanction. Under the latter scenario, Pogonovich contends that the entry of the default judgment as a sanction pursuant to Pa.R.C.P. 4019 is an adjudication on the merits of the Plaintiff's counterclaim against the Defendant. As distinguishing factors from a typical default judgment entered for failure to appear, Pogonovich submits in his Motion for Summary Judgment that "the Debtor commenced the Washington County proceedings; that the Debtor filed Preliminary Objections to Pogonovich's Counterclaim, after which Pogonovich filed an Amended Counterclaim; and that throughout the proceedings the Debtor substantially participated in the Washington County case." Although the level of Debtor's participation in the state court action is contested, the other factors are confirmed by a review of the docket.

In support of his Motion, Pogonovich relies upon the Pennsylvania Supreme Court's decision in *Fox v. Gabler*, 626 A.2d 1141 (Pa. 1993). In *Fox*, the Pennsylvania Supreme Court stated that, when a default judgment is imposed as a sanction for failure to adequately respond to discovery requests pursuant to Pa.R.Civ.P. 4019, "the judgment by default is *res judicata* and quite as conclusive as one rendered on a verdict after litigation insofar as the defaulting

---

[5] This is in contrast to the doctrine of *res judicata*, or claim preclusion, which is applicable to a default judgment. *Straker*, 2011 WL 398374, at *5, 2010 U.S. Dist. LEXIS 141039, at *12.

defendant is concerned." *Id.* at 1143. While the purpose of the doctrine of *res judicata* is to preclude a future suit between the parties on the same cause of action when a final judgment on the merits exists, that is not the issue before this Court. Rather, the issue is whether collateral estoppel applies, an issue which was not addressed by the court in the *Fox* decision.[6]

Nonetheless, Pogonovich contends that collateral estoppel applies to these facts and refers to *Signora v. Liberty Travel, Inc.*, 886 A.2d 284 (Pa. Super. Ct. 2005), in support of this argument. *Signora* does not support this contention. In fact, *Signora* addresses the preclusive doctrines of *res judicata* and the law of the case, not collateral estoppel. The defendants in that case were making various efforts to open and attack a default judgment. *See Signora*, 886 A.2d at 288-289. Also, unlike the facts presented in this proceeding, *Signora* involved a default judgment entered against the defendants for failure to answer and not as a sanction. *Id.* at 288. However, similar to the argument presented to this Court, defendants in *Signora* attempted to distinguish default judgments entered as a sanction for discovery violations and those entered for failure to respond to a complaint. The court rejected the distinction as "spurious and unsound". *Id.* at 291. Thus, Pogonovich's premise is undermined by the case.

Although the collateral estoppel doctrine as applied in Pennsylvania is the relevant version of the doctrine for consideration in this matter, Pogonovich nonetheless attempts to persuade this Court to apply the analysis of the *federal* collateral estoppel doctrine, specifically

---

[6] The United States District Court for the Eastern District of Virginia addressed *Fox* in a proceeding similar to this one when it was faced with the issue of whether a default judgment entered by a Pennsylvania court was entitled to collateral estoppel effect in a federal bankruptcy discharge proceeding. *Schriver v. Valley Stream Financial Corp.* (*In re Schriver*), 218 B.R. 797 (E.D. Va. 1998) (memorandum opinion on rehearing). In that case, *Fox* was cited for the proposition that the "actually litigated" requirement was met when the judgment was entered as a sanction for failure to respond to discovery. *Id.* at 806. The court held that *Fox* did not stand for the proposition as argued and the party confused the concepts of *res judicata* and collateral estoppel. *Id.* This Court agrees.

an exception thereto, set out by Third Circuit Court of Appeals in *Wolstein v. Docteroff* (*In re Docteroff*), 133 F.3d 210 (3d Cir. 1997). As the elements for collateral estoppel under federal law are essentially the same as those required by Pennsylvania law, Pogonovich contends the *Docteroff* analysis is applicable. *Smith v. Cowden* (*In re Cowden*), 337 B.R. 512, 530 (Bankr. W.D. Pa. 2006). This Court disagrees.

In *Docteroff*, the Third Circuit addressed a default judgment entered as a sanction for discovery violations where a party willfully obstructed discovery after participating extensively in the case. *See* 133 F.3d at 215. Under those circumstances, the court held that a party should be deemed to have actually litigated the issue for purposes of collateral estoppel. *Id*. However, it should be noted that "*Docteroff* presents an exceptional rule, not to be applied rigidly in all instances of procedural default." *Lincoln Trust v. Parker* (*In re Parker*), 250 B.R. 512, 518 (M.D. Pa. 2000).

Despite the persuasive policy reasons for the exception to the general collateral estoppel rule set forth in *Docteroff*,[7] Pogonovich cites to no Pennsylvania case adopting the *Docteroff* analysis and simply has not convinced this Court that Pennsylvania courts would create an exception for default judgments entered for failure to respond to discovery requests. The fact that Pennsylvania's collateral estoppel doctrine requires essentially the same elements as the federal doctrine does not necessarily determine whether Pennsylvania would create the same exception

---

[7] In *Docteroff*, the Third Circuit did "not hesitate in holding that a party . . . , who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application." *See* 133 F.3d at 215. "To hold otherwise would encourage behavior similar to Docteroff's and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *Id.* Thus, the hallmark of the *Docteroff* decision is bad faith and the extent of participation is only a factor from which to assess abuse of process. *See Parker,* 250 B.R. at 519-20. As discussed *infra*, the egregious misconduct found in *Docteroff* is not evident in this case.

9

to the general rule. Therefore, Pogonovich has not met his burden under the summary judgment standard to establish that he is entitled to judgment as a matter of law.

Furthermore, even if this Court were convinced that Pennsylvania courts would adopt the exception set forth in *Docteroff*, the facts are distinguishable. In *Docteroff*, the district court, when entering default judgment, specifically found that Docteroff's non-compliance with discovery rules and orders was the product of willfulness and bad faith. *See id.* at 213. In fact, in a thorough opinion, the district court "meticulously detailed Docteroff's outrageous and contemptuous conduct, and weighed the public's and litigants' interests in deciding cases on the merits against deterring the future abuses." *Id.*at 216. Also noteworthy is the fact that Docteroff was represented by counsel and acted as though he had a desire to adjudicate the matter. *See Parker*, 250 B.R. at 517, n.6. The attempt to frustrate the litigation in *Docteroff* reveals a degree of bad faith that is not apparent from the record in this case as demonstrated by the following summary of Docteroff's misconduct:

> In the underlying defaulted case, efforts to schedule depositions of Docteroff and a codefendant began in March 1994, but Docteroff refused to agree to a date. The plaintiff eventually scheduled them for May, but Docteroff failed to appear. In late June, depositions were rescheduled for August, based on Docteroff's professed availability. After an abrupt declaration by Docteroff that he could not attend on the August dates, the court formalized the rescheduling, and ordered his appearance on the August dates. Docteroff nonetheless failed to appear, and the only explanation he gave was that there was a scheduling conflict. At the eventual deposition in September, Docteroff offered only meager excuses for the absence. Moreover, documents requested in April were not produced until June, and even then, the documents produced were not sufficiently responsive to the request, and were accompanied by poor excuses as to the unavailability of the data. Significantly, Docteroff was represented by an attorney and pretended a desire to adjudicate the matter throughout the process. *Wolstein v. Bernardin*, 159 F.R.D. 546, 547–52 (W.D.Wash.1994).

*Parker*, 250 B.R. at 517, n.6. The facts of *Docteroff* simply are not present here.

Rather, the facts are more similar to those in *Lincoln Trust v. Parker* (*In re Parker*), 250 B.R. 512, 518 (M.D. Pa. 2000) (examining the applicability of *Docteroff* to the collateral estoppel doctrine of Wyoming). In that case, the court noted that it was troubled by the debtor's discovery abuses, but it was noteworthy that the debtor's attorney left the case due to the debtor's inability to pay him. *See* 250 B.R. at 519, n.8. The court distinguished *Docteroff*, noting that the debtor lacked the assistance of counsel during critical events and did not take frivolous actions to frustrate the process. *Id.* at 519-20. Viewing the record in the light most favorable to the nonmoving party, the court noted that the debtor "may simply have been unable to foot mounting legal bills, and the inconvenience of a *pro se* defense, which would explain why he initially pursued a defense with counsel, but later balked." *Id.* at 520. In addressing conflicting policy reasons, the court stated, "[t]o have an absolute rule forcing debtors to fully litigate their case in state court, thwarts bankruptcy policy by compelling those already encumbered with debt to expend additional resources defending state court claims." *Id*. Ultimately, the court found summary judgment to be inappropriate as the facts did not support a finding of egregious misconduct like that in *Docteroff*. *Id.* at 521.

In this case, the Court acknowledges that it was the Debtor who initiated the state court proceedings and actively participated in the initial stages. However, although the Debtor was sanctioned for failure to respond to discovery, given several chances to comply, and warned of the possibility of entry of a default judgment, it is clear from the docket that his participation in the action ceased after his counsel withdrew in 2009. Similar to *Parker*, Debtor contends that he was unable to retain counsel due to severe financial hardship. Debtor further submits that, after his counsel withdrew, he focused on his pending divorce and ceased pursuing claims against Pogonovich. Debtor's contentions are supported by the Mediator's Report in the state court

proceedings dated July 27, 2010, which provides that, "Robert Bertolotti, contacted the undersigned directly and explained that he was no longer represented by counsel. At the time, he was considering filing for bankruptcy and had indicated he would not come to any Mediation Conference that was scheduled." The Mediator's Report verifies that the Debtor's participation in the state court proceeding ceased, that he was unrepresented, and that he was experiencing financial difficulties. Furthermore, it was not until August of 2010 that Pogonovich's counterclaim was amended to include counts alleging fraud, which are the allegations material to this adversary proceeding. These additional allegations were made long after Debtor was without the benefit of counsel and apparently while he was unable to afford to retain new counsel. The docket reflects no answer filed with respect to the Amended Counterclaim. Thus, the default judgment, at least as to the allegations of fraud, is more akin to a typical default judgment where a party does not participate due to inability to afford counsel.

      Accordingly, we find that the *Docteroff* analysis does not apply here. The state court did not issue an opinion or order with findings of bad faith or outrageous conduct by this Debtor. Pursuant to the summary judgment standard, this Court examines the record in the light most favorable to the non-moving party and finds no evidence of bad faith on the record. Therefore, even if Pennsylvania courts distinguished between default judgments resulting from failure to appear and default judgments resulting from discovery violations for purposes of collateral estoppel pursuant to the analysis in *Docteroff*, we find that the exception does not fit the facts of this case. Therefore, as this Court finds that the counts of the Amended Counterclaim alleging fraud in the inducement and fraudulent misrepresentation were not actually litigated, the elements of collateral estoppel have not been met and summary judgment is not appropriate.

**III.    Conclusion**

For the foregoing reasons, the state court judgment will not be given preclusive effect in this adversary proceeding as the elements of collateral estoppel under Pennsylvania law have not been met. Therefore, the Motion for Summary Judgment is denied. An appropriate order will be entered.

Date: May 17, 2012                                     /s/ Carlota M. Böhm
                                                       Carlota M. Böhm
                                                       United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
  Office of the United States Trustee
  Pamela J. Wilson, Esq., Chapter 7 Trustee
  Thomas E. Reilly, Esq., Counsel to Plaintiff
  Karl Pogonovich, Plaintiff
  Kevin T. Horner, Esq., Counsel to Debtor/Defendant
  Robert Allen Bertolotti, Jr., Debtor